RENDERED:  JULY 2, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-0688-ME
AND
NO. 2019-CA-0745-ME


WENCY SHAIDA                                         APPELLANT/CROSS-APPELLEE



APPEAL AND CROSS-APPEAL FROM BOONE FAMILY COURT
v.          HONORABLE LINDA R. BRAMLAGE, JUDGE
ACTION NO. 15-CI-01300



PUNAM SHAIDA                                         APPELLEE/CROSS-APPELLANT



OPINION
AFFIRMING

** ** ** ** **

BEFORE:  ACREE, CALDWELL, AND K. THOMPSON, JUDGES.

THOMPSON, K., JUDGE:  Wency Shaida appeals and Punam Shaida cross-

appeals from the Boone Family Court's supplemental decree of dissolution.

Wency argues the family court erred by awarding Punam half of Wency's

nonmarital real estate as a gift and imputing rental income to Wency that she did

not actually receive in calculating child support. Punam argues these actions were proper but that the family court erred in: assigning certain accounts to Wency as nonmarital without adequate tracing; requiring equalizing payments for the equity in their vehicles; requiring Punam to make the equalizing payments before she received her share of the value of the real estate rather than offsetting the payments; valuing the real estate as of the date of dissolution; and failing to make sufficient findings on timesharing issues. We affirm.

On May 26, 2007, same sex female couple Wency and Punam, residents of California, were married in Canada where such a marriage was legal at that time. We believe that pursuant to *Obergefell v. Hodges*, 576 U.S. 644, 681, 135 S.Ct. 2584, 2607-08, 192 L.Ed.2d 609 (2015), their marriage should be recognized as of the date they married in Canada. In August 2008, they registered as domestic partners in California.

Wency and Punam have one child, A.R.S. (child), born in March 2011. Punam is the biological mother of child. Wency and Punam are both listed on child's birth certificate and the parties agree they are child's parents.

Prior to the marriage, Wency was the owner of two pieces of real estate which she had received from her parents and which were by far her greatest assets: a townhome on 24th Avenue in San Francisco, California, and an undeveloped lot in Lake County, California (the properties). Wency contends the

townhome is worth $760,000 and the lot is worth $16,000. Punam contends the townhome is worth $1,400,000 and the lot is worth $100,000.

The townhome was Wency's childhood home and the couple used it as their marital home. In 2008, Wency deeded these properties to herself and Punam jointly and, subsequently, Punam invested her money in renovating and updating the townhome.

In January 2014, Wency and Punam separated and Punam moved out with child. In September 2014, Punam moved to Kentucky with child.

In 2015, Wency filed for dissolution in Boone Family Court. In March 2016, in a temporary agreed order, the parties agreed to joint custody with Punam to be the primary residential custodian and for Wency to have parenting time during school breaks; they agreed Wency would pay guideline child support and they would divide other expenses.

On July 7, 2017, the decree of dissolution was entered dissolving the marriage but reserving decision on all other issues. On March 14, 2019, the family court held the dissolution trial, hearing testimony from Wency and Punam and receiving written evidence.

On April 9, 2019, the supplemental decree of dissolution and the supplemental findings of fact and conclusions of law were entered. The family court implicitly determined that the properties were marital but chose to award

their disposition based upon the evidence concerning how this gift was made by Wency and her intentions at the time. Upon dissolution, the family court awarded the properties as individually owned 50% by each woman and ordered that Wency retain the properties and reimburse Punam for her half as valued by subsequent appraisal based on the date of the dissolution decree. The family court found that Wency had three non-marital accounts. It allowed each spouse to retain their own financial accounts, but marital accounts, debts, and the vehicles they were awarded were equalized by Punam being required to pay Wency the difference totaling $44,804.78.

Wency was ordered to pay $559.13 a month in child support during the months when Punam had child. However, in the summer months when child was with Wency, Punam would pay $665.87 a month in child support.

Wency appealed and Punam cross-appealed. Further facts and rulings will be set out where relevant below.

Wency argues that the properties should have been restored to her as her nonmarital property because Punam failed to prove by clear and convincing evidence that these pieces of real estate were either transmuted or gifted to her. Wency argues the current title of the properties is irrelevant to determining ownership of the properties, and there was no intent on her part to gift the

properties to Punam. Punam argues that the family court acted correctly in determining that Wency gifted Punam with a 50% share in the properties.

Underlying her position that the family court erred in the division of the properties, Wency makes two supporting arguments. The first is that the family court made a finding that Wency did not intend to gift the properties to Punam, but rather to secure them for their family and, so, erred by then awarding the properties in equal parts.

We disagree with Wency's characterization of the family court's supplemental findings. The family court recited the parties' positions and testimony, including Wency's testimony that she "did not intend to gift the property to [Punam] but rather to secure their home as a family should [Wency] pass away at a time when the parties' marriage was not recognized as legally binding[,]" and Punam's testimony that she believed she owns a 50% nonmarital interest in the properties which were a gift from Wency. In setting out these facts, the family court did not make a ruling as to whether Wency's testimony should be believed over the testimony from Punam. The family court's actual factual findings occurred later in the supplemental findings. Therefore, there is no inconsistency in the family court's factual findings that would merit reversal.

Wency's second supporting argument is that the family court erred in its award based upon inadmissible evidence in the form of a letter dated October 9,

2008, in which the attorney jointly representing Wency and Punam provided a detailed explanation of the consequences of entering into the real property transfer deeds. Wency objected to the admission of this letter at trial, arguing it was not authenticated, constituted hearsay, and she was denied due process and the right to confrontation because the attorney was not called as a witness.

The family court admitted the letter into evidence over Wency's objection and quoted from large sections of that letter in the supplemental findings of fact and conclusions of law. In relative part, regarding how the property would be owned, the letter stated:

> As you have instructed us, we are preparing real property transfer deed for each of the two properties referenced above so that you may jointly own these properties. We have prepared grant deeds that will put the property into joint tenancy ownership which is equal ownership during life and automatic inheritance by the surviving owner if one of you were to pass. . . .
>
> Prior to this, each of these properties was in Wency's name alone and is the sole and separate property of Wency. By gifting a 50% interest to Punam via these deeds, the properties will be considered to be equally owned by both of you. Because you recently registered as Domestic Partners with the State of California, there should be no transfer tax or reassessment of either property. . . .
>
> We have discussed that by executing these deeds, the properties will no longer be in Wency's name alone but in fact will be jointly owned by you both in equal shares. You have indicated that Punam will in fact be contributing to the 24th Street property for future

improvements and will not be reimbursed for these monies but in fact any expenditures on the properties by either of you in the future will be considered equally yours. Because you do not have a prenuptial (or a pre domestic partnership agreement), under California State Law, all of your earned income is considered to be community property and any contributions not otherwise noted will be considered community property contributions.

We also discussed that a recorded deed is in fact considered a completed gift and is irrevocable. In the event that you ever dissolve your partnership, each of you will legally be the owner of one-half of each property. You would then have to negotiate how you would continue to own (or not) each of the properties. Presumably, either one of you, or a judge, could force a sale of the properties if you were not able to agree. We have also discussed options to execute a note or tenancy in common agreement that would secure Wency's current equity position in the properties and allow you to share equally from the date of transfer on, but you have declined.

Below the text from the attorney, which had her name but not the attorney's signature, was the following statement: "By signing below, we, Wency Fong and Punam Shaida, hereby acknowledge that we have carefully read this letter, understand its contents and agree to its terms." Wency and Punam each signed the letter and wrote the date.

The family court considered this letter, along with the wording of the signed and notarized grant deeds, to reach its decision. Each deed reads in pertinent part as follows: "Wency M. Fong, an unmarried woman, hereby grants

and conveys all of her interest to Wency M. Fong and Punam Shaida, registered domestic partners, as joint tenants with right of survivorship the real property situated [then a legal description of each property was given]." Each deed noted: "This transfer creates a Joint Tenancy and is exempt from reassessment pursuant to §65(b) of Revenue and Tax Code. Gift. Revenue and Tax Code §11930."

The standard of review for admission of evidence is the abuse of discretion standard. *Kentucky River Medical Center v. McIntosh*, 319 S.W.3d 385, 395 (Ky. 2010). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999).

Wency argues that the letter was not properly authenticated pursuant to the Kentucky Rules of Evidence (KRE) 901 without having the attorney testify. However, KRE 901 does not make testimony of the purported author a requirement of admission. KRE 901(a) states: "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." It then provides illustrations of examples of authentication or identification which satisfy the rule, including "[t]estimony of a witness with knowledge . . . that a matter is what it is claimed to be[,]" "[n]onexpert testimony

on handwriting[,]" and "[d]istinctive characteristics . . . taken in conjunction with circumstances." KRE 901(b)(1), (2), and (4).

"The burden on the proponent of authentication is slight; only a prima facie showing of authenticity is required." *Sanders v. Commonwealth*, 301 S.W.3d 497, 501 (Ky. 2010). "Exercising its considerable discretion, a trial court may admit a piece of evidence solely on the basis of testimony from a knowledgeable person that the item is what it purports to be and its condition has been substantially unchanged." *Kays v. Commonwealth*, 505 S.W.3d 260, 270 (Ky. App. 2016). Therefore, the recipient of a message can authenticate it. *Id.* at 269-70.

Punam testified that the letter she produced, which she had maintained since she received it from the attorney, was written by their joint attorney in conjunction with the deed transfer. Wency admitted that the signature was hers. The letter contained discussions of the tax implications of this transfer and the wording of the deeds which was consistent with the face of the deeds. For authentication purposes, it is immaterial that Wency did not recall signing the document or its content, so long as the family court was convinced that the document was adequately authenticated without her recollection. While on appeal Wency makes some vague allegations that Punam may have forged the letter and then got Wency to sign it, Wency has provided nothing but speculation in support

of such an allegation.  The family court did not err in its finding that the letter was what it was purported to be.

Wency also discusses in detail why it is inappropriate to rely on the attorney's letter regarding California law, noting that although married in Canada, at that time their marriage was unrecognized in California and the legal advice was instead based on their status as registered domestic partners.  While we agree that the attorney's letter could not be admitted for the purpose of providing a binding and authoritative statement of the effect of the deeds pursuant to California law, and would be inadmissible hearsay pursuant to KRE 801(c) and 802 if relied upon to prove the truth of the matter asserted regarding California law, this letter was properly admissible pursuant to KRE 801A(b)(2), (3), or (4).

KRE 801A(b) provides in relevant part as follows:

Admissions of parties.  A statement is not excluded by the hearsay rule, even though the declarant is available as a witness, if the statement is offered against a party and is:

. . .

(2) A statement of which the party has manifested an adoption or belief in its truth;

(3) A statement by a person authorized by the party to make a statement concerning the subject; [or]

(4) A statement by the party's agent or servant concerning a matter within the scope of the agency

or employment, made during the existence of the relationship[.]

The attorney here was specifically hired by the parties to advise them on how best to retitle the properties to achieve their goals. While the attorney's letter did not constitute a contract, it memorialized that a gift was intended, and confirmed the advice that had been given as to how the properties would be owned in the event that a dissolution of their domestic partnership occurred. By signing after the acknowledgment statement, Wency manifested an adoption or belief in the statements contained in the attorney's advice letter, including that the new deeds gifted Punam with a 50% share in the properties which she would continue to own even after any dissolution of their domestic partnership. The attorney was authorized to advise Wency and Punam about the implications of Wency's actions and acted as their agent at their direction.

The letter was a valid source for considering Wency's intent at the time, that having been properly advised that she could preserve her equity right to the entire value of the properties prior to that time while still sharing them with Punam going forward, Wency insisted on gifting Punam with an irrevocable 50% share. The clear implication is that if Wency objected to this disposition of her real property, she would not have signed the letter but would have instead asked the attorney to change the type of deeds in which she named Punam as a joint tenant with right of survivorship. Therefore, this advice letter was properly admissible

pursuant to KRE 801A(b) as evidence of Wency's intent and understanding of what would happen to the property if the parties dissolved their domestic partnership.

Having resolved these supporting arguments, we now turn to the family court's decision regarding the award of the properties. The family court made factual findings about the properties as follows:

> The Court finds that [Wency] transferred the two properties to [Punam] as gifts. The Court further finds that the intent of the gifts was evidenced in the deeds (Petitioner's Exhibit 7 and 8) and the letter (Respondent's Exhibit 10), which states that by executing the deeds the properties will no longer be in Wency's name alone but will be jointly owned by both parties. Based on the content of the letter and the deeds, the Court finds that [Wency] did intend to gift 50% of both properties to [Punam]. [Wency] did testify that she only transferred 50% of both properties to [Punam] due to the uncertainty of same-sex marriage. However, the letter and the deeds are persuasive evidence which the Court cannot ignore. Accordingly, the Court finds that the 50% transfer of both pieces of property from [Wency] to [Punam] was intended to be a gift to [Wency] and awards the two properties to [Punam] and [Wency], 50% each as nonmarital property.

Both parties apparently agree that these properties should be classified and divided pursuant to Kentucky law.[1] We note that while the family court could

---

[1] It appears that if California law were to be applied, these properties would be presumed (pursuant to the deeds of conveyance in which they were acquired in joint form) to be community property which is subject to equal division upon dissolution. *In re Marriage of Weaver*, 127 Cal. App. 4th 858, 864-66, 26 Cal. Rptr. 3d 121, 125-26 (2005); Cal. Fam. Code §§

properly declare the parties' interests in these properties pursuant to Kentucky law, enforcement and actual transfer of title will rest in California. *See Fehr v. Fehr*, 284 S.W.3d 149, 152-53 (Ky.App. 2008) (discussing how an *in personam* decree indirectly affects title to land in a dissolution action by resolving rights between the parties but enforcement depends on the law where the real property is located).

While Wency disagrees with the family court's factual findings that the properties were half-gifted to Punam, she does not argue that the family court erred by failing to make explicit findings that it found these properties to be marital before it awarded the properties in equal proportions, with Wency to maintain ownership and Punam to be reimbursed for her share. Indeed, in her cross-appellee brief, Wency notes regarding the issue as to when the properties should have been valued that the family court considered them to be marital properties. While Wency argues the properties should have been considered solely her separate property,[2] she does not dispute the family court's discretion as to how to divide

2581 and 2550. Thus, the same outcome might result from the application of California law. However, pursuant to Cal. Fam. Code § 2640, such property is not presumed to be a gift based only on the language of the deeds alone and it requires a written statement of gift; it appears that the attorney's letter would qualify as a written statement of gift. If it did not, each party would potentially be entitled to be reimbursed for their contributions to the properties as they did not disclaim such reimbursement and acknowledged each other's contributions, but any increase in value would be community property. *In re Marriage of Weaver*, 127 Cal. App. 4th at 866-70, 26 Cal. Rptr. 3d at 126-29.

[2] Wency also argues that the share of the properties she acquired from her father should have equally belonged to her brother. However, the deeds she filed never named him, he did not testify, and there was no other evidence other than her testimony that he owned a share of these properties. The family court was entitled to implicitly find that either Wency's brother had no

-13-

them once they were classified as marital properties. Therefore, we read the family court's findings as containing an implicit finding that Wency's gift of a 50% share of both properties to Punam conveyed an undivided one-half interest in the properties to Punam, thereby converting Wency's nonmarital properties into marital property. The award is then properly interpreted as awarding each woman a one-half share in these marital properties, which upon award became their nonmarital property.

"Trial courts [resolving dissolution issues] are faced with the difficult task of weeding through emotionally-charged testimony and often slanted evidence to reach a fair and equitable result. Because of this, trial courts are afforded broad discretion in dividing marital property and marital debt." *Jones v. Livesay*, 551 S.W.3d 47, 51 (Ky.App. 2018).

"A factual finding is not clearly erroneous if it is supported by substantial evidence. Substantial evidence is evidence, when taken alone or in light of all the evidence, which has sufficient probative value to induce conviction in the mind of a reasonable person." *Hunter v. Hunter*, 127 S.W.3d 656, 659 (Ky.App. 2003) (citations omitted). We review *de novo* a trial court's legal

_____

share of these properties or had gifted any right to a portion of these properties he might have had to Wency. As he is not a party to these proceedings, any remedy he might have would lie in an action before California courts.

-14-

findings as they apply to the facts. *Ensor v. Ensor*, 431 S.W.3d 462, 469 (Ky.App. 2013).

"Whether property is considered a gift for purposes of a divorce proceeding is a factual issue subject to the clearly erroneous standard of review." *Hunter*, 127 S.W.3d at 660. However, "[u]ltimately, classification is a question of law, which should be reviewed de novo." *Smith v. Smith*, 235 S.W.3d 1, 7 (Ky.App. 2006).

Kentucky Revised Statutes (KRS) 403.190 governs the division of property during a dissolution. "Under KRS 403.190, a trial court utilizes a three-step process to divide the parties' property: '(1) the trial court first characterizes each item of property as marital or nonmarital; (2) the trial court then assigns each party's nonmarital property to that party; and (3) finally, the trial court equitably divides the marital property between the parties.'" *Sexton v. Sexton*, 125 S.W.3d 258, 264-65 (Ky. 2004) (quoting *Travis v. Travis*, 59 S.W.3d 904, 908 (Ky. 2001) (footnotes omitted)).

KRS 403.190 provides in relevant part as follows:

(1) In a proceeding for dissolution of the marriage . . . the court shall assign each spouse's property to him. It also shall divide the marital property without regard to marital misconduct in just proportions considering all relevant factors including:

(a) Contribution of each spouse to acquisition of the marital property. . . ;

-15-

(b) Value of the property set apart to each spouse;

(c) Duration of the marriage; and

(d) Economic circumstances of each spouse when the division of property is to become effective . . . .

(2) For the purpose of this chapter, "marital property" means all property acquired by either spouse subsequent to the marriage except:

(a) Property acquired by gift, bequest, devise, or descent during the marriage and the income derived therefrom unless there are significant activities of either spouse which contributed to the increase in value of said property and the income earned therefrom;

(b) Property acquired in exchange for property acquired before the marriage or in exchange for property acquired by gift, bequest, devise, or descent;

. . .

(3) All property acquired by either spouse after the marriage and before a decree of legal separation is presumed to be marital property, regardless of whether title is held individually or by the spouses in some form of co-ownership such as joint tenancy, tenancy in common, tenancy by the entirety, and community property. The presumption of marital property is overcome by a showing that the property was acquired by a method listed in subsection (2) of this section.

The family court had evidence before it which could have supported either a finding that the properties were Wency's nonmarital property and retained

this character even when the new deeds were filed naming Wency and Punam as joint tenants, or that the new deeds converted the properties into marital properties in which each woman owned an undivided one-half interest in the properties. The family court was entitled to make a finding based on the language of the deed and based on the attorney's letter that Wency intended to convert what had been her nonmarital property into marital property which she gifted to the two of them with the intention that Punam would own 50% of the properties in the event that their partnership dissolved. In doing so, the family court also apparently concluded that Punam's payments for improving the home would not result in her owning any appreciation to the home as her separate property. We have no difficulty in concluding that the family court acted within its discretion in making this finding and its ultimate classification of the property was correct as a matter of law.

Wency's other argument is that the family court erred in imputing rental income to her that she did not actually receive in calculating child support, arguing that being voluntarily unemployed is different from having a holdover tenant that refuses to pay. Wency explains that in the six months prior to trial, her tenant failed to pay rent, it is difficult to evict holdover tenants in San Francisco and, even if she had received rent, this income should have been offset by her expenses.

The family court's determination that Wency would pay child support of $559.13 a month for child was based on a child support worksheet in which the family court found that Punam's monthly income was $13,706 and Wency's was $8,133. In calculating Wency's monthly income, the family court noted that Wency had a yearly salary of $74,800 and received $22,800 in rental income. The family court specifically found:

> [Wency] has the ability to have rental income of $22,800.00 per year. [Wency] has a tenant in her home and stated that the monthly rent is $1,900.00 but she has been allowing the tenant and the tenant's child to live rent free for approximately 6 months. The Court finds that [Wency] should be imputed the amount of $22,800.00 per year for the rental income that she was receiving but allowed the tenant to discontinue paying.

"[T]he establishment . . . of child support is generally prescribed by statute and largely left, within the statutory parameters, to the sound discretion of the trial court." *McKinney v. McKinney*, 257 S.W.3d 130, 133 (Ky.App. 2008). This "broad discretion in considering a parent's assets and setting correspondingly appropriate child support" will not be disturbed absent an abuse of discretion. *Downing v. Downing*, 45 S.W.3d 449, 454 (Ky.App. 2001). It was appropriate for the family court to determine child support based on the future income that Wency could expect. If she wished a deduction for rental expenses, she needed to establish those expenses.

-18-

We note before proceeding to consider Punam's arguments that Punam failed to specify how she preserved most of the issues she raises in her cross appeal. Kentucky Rules of Civil Procedure (CR) 76.12(4)(c)(v) requires that the argument section of an appellate brief "shall contain at the beginning of the argument a statement with reference to the record showing whether the issue was properly preserved for review and, if so, in what manner." This requirement is mandatory, and we have several options for how to respond to this deficiency available to us. *See Petrie v. Brackett*, 590 S.W.3d 830, 834-35 (Ky.App. 2019). We have chosen to review the issues for which there is no indication as to preservation for manifest error only.

Punam's first argument in her cross appeal is that she should receive one-half of the current value of the real estate since each party was assigned a 50% nonmarital interest in it and any increase in value since that time is the result of general economic factors. Regarding the time frame for valuing the property, the family court found that the properties should be appraised as of July 7, 2017, when the parties divorced.

Our statutes do not clarify when marital property should be valued for purposes of division. *See* KRS 403.190(1)(d) (stating that when dividing marital property, the court should consider the "[e]conomic circumstances of each spouse when the division of property is to become effective[.]").

However, the general rule is that marital property "must be valued as of the date of the dissolution decree." *Shively v. Shively*, 233 S.W.3d 738, 740 (Ky.App. 2007) (relying on *Stallings v. Stallings*, 606 S.W.2d 163 (Ky. 1980)). *See Thomas v. Thomas*, 248 S.W.3d 564, 565-66 (Ky. 2008) (declining to require a new evidentiary hearing when a domestic relations commissioner (DRC) failed to commit its oral ruling to a written judgment for four years, noting "at least as to valuation, there would be no change because the DRC was constrained to value the property as of the date of the divorce, which presumably he did."); *Jones v. Jones*, 245 S.W.3d 815, 819 (Ky.App. 2008) (explaining the fair market value of marital real property is calculated based on its value at the time of the dissolution). *See also Armstrong v. Armstrong*, 34 S.W.3d 83, 86 (Ky.App. 2000) ("pension and profit sharing plans should be valued on the date of the divorce decree."). *But see Culver v. Culver*, 572 S.W.2d 617, 623 (Ky.App. 1978) ("if marital property has appreciated in value after the separation or decree dissolving the marriage because of general economic conditions rather than the efforts of only one of the parties, then such appreciation in value should be considered in the division of the marital property.").

The family court acted within its discretion in dividing the properties as of the date of the dissolution as this is the general time when the properties should be valued and was also the date when all the other marital property was

-20-

valued. As these properties were divided as of that date, Wency has been responsible for paying taxes and maintenance on the properties since that time and the rent she has or could have received for the San Francisco home has been used in calculating her income for purposes of the child support award. Punam has no entitlement to any appreciation in the value of the properties after the date of their division.

Punam's second argument is that the JP Morgan Investment account and the two TD Canada Trust accounts are marital property because Wency failed to properly trace them as being nonmarital by only providing recent statements from them. She argues that Wency's testimony that her parents set up the JP Morgan account and that she opened the TD Canada accounts prior to the marriage and that she did not deposit any funds into either account during the marriage is insufficient proof.

In her exhibits, Wency included a letter regarding one of her TD Canada Trust accounts dated January 6, 2015, which indicated her account had been inactive for five years and was considered "dormant" and another letter dated January 3, 2019, that said the account had been dormant for nine years. While this span did not predate the marriage, it was at least some evidence that the accounts were longstanding and had not been used. Wency also testified to the origins of

the accounts as being nonmarital without any contributions during the marriage. Punam did not present any contradictory evidence.

In the family court's supplemental factual findings, it found that both TD Canada Trust accounts (one of $813.02 and one of $556.81) are Wency's nonmarital property but did not explain its reasoning. The family court found that Wency's JP Morgan account, worth $7,825.22, is her nonmarital property and explained that "it was set up by [Wency's] parents when she was a child." The family court assigned these accounts to Wency.

Wency's testimony and documentary evidence provided sufficient grounds for the family court to properly find that these accounts were Wency's nonmarital property and properly awarded them to her.

Punam argues that the family court improperly ordered her to pay Wency the difference in the equity of their vehicles because the parties had stipulated at the outset that the vehicles should be awarded to their respective owners, which should have precluded any equalizing payment. Punam explains, "[a]lthough neither party specifically stated that the agreement to keep their separate vehicles included any equity thereon, it can reasonably be inferred from

the facts, especially since Punam had previously made a large payment to Wency regarding the vehicles."[3]

The family court ordered Punam to pay to Wency $6,050.00 as her share of the equity in the 2012 Audi Q5 minus Wency's share of the value of Wency's 2003 BMW 525i. The family court explained in its factual findings that the 2003 BMW 525i awarded to Wency had a value of $2,800.00 and the 2012 Audi awarded to Punam had a value of $14,900.

It is undisputed that these cars were marital property. Once property is classified as marital, the family court has wide discretion in dividing it and need not divide it equally. *Smith*, 235 S.W.3d at 6. Instead, marital property should be divided "in just proportions considering all relevant factors" including the "economic circumstances of each spouse[.]" KRS 403.190(1)(d). The family court properly acted within its discretion in equalizing the cars awarded and could also properly award Wency additional marital funds.

Punam argues that in equalizing the awards between the parties, the $44,804.78 that Punam was ordered to pay to Wency ($34,824.85 for financial

---

[3] Punam noted that earlier in the case the family court ordered her to pay Wency $8,556.39 as reimbursement on the 2012 Audi Q5 for car payments, car insurance, and the cost to pay off the remaining principal balance on the loan. On April 19, 2019, Punam moved the family court to amend its judgment based upon Punam's having paid pursuant to a court order the debt of $7,267.00 associated with the 2012 Audi and requested the family court amend the equalizing payment to $2,416.50. However, before a ruling was made on this motion, Wency appealed from the orders and Punam filed a cross-appeal.

accounts within ninety days of the supplemental decree, $3,929.93 for marital debt within ninety days, and $6,050.00 for the vehicles within sixty days), should be due at the same time and offset from the 50% nonmarital value of the real estate Punam is due, which is substantially more than what Punam owes Wency. Regarding when Wency should pay Punam for her one-half interest in the properties, the family court said payment should be made "within a reasonable time." Punam argues that it is inequitable for her to have to pay Wency and not set a firm deadline for Wency to pay Punam and offset their payments. We disagree.

We do not believe there is any manifest injustice in requiring payment to be made at different times when certain sums are known, and other sums are not, considering the disparity of income between the parties. Wency could not be ordered to pay Punam for her share of the properties within the same timeline as Punam had to pay Wency for financial accounts, marital debt, and for the vehicles. Neither party had obtained appraisals for the properties and Wency and Punam greatly disagreed as to their value. Once appraisals are obtained, the family court will still have to determine the fair market value of the properties and award a definite amount, and Wency will likely have to obtain a mortgage to pay Punam for her share. Under these circumstances, it was reasonable that Punam was to receive her share of the properties within a reasonable amount of time.

Punam argues that the family court's findings are vague and incomplete when it comes to specifying how travel for timesharing shall take place, as the family court does not specify that the parties each fly one way with child, does not clarify that all parenting time not awarded to Wency is awarded to Punam, and fails to specify the exact length of winter break and which party should have Christmas morning first. Punam argues that she preserved this issue because on April 19, 2019, she filed a motion to amend (which did not raise this issue), but she then filed an amended version of the motion on June 21, 2019, which raised this issue but is not part of the record on appeal. She asks that we remand for more specific findings.

We believe these findings are clear enough. The parties should attempt to cooperate in sharing parenting time and acting in the best interests of child. And, in any event, we cannot consider Punam's amended motion filed months after the first one and while the matter is pending on appeal. Any relief on this issue must first be sought before and ruled upon by the family court.

Accordingly, we affirm the Boone Family Court's award of property and child support in the supplemental decree of dissolution.

ALL CONCUR.

BRIEFS FOR APPELLANT/CROSS-APPELLEE:

Tasha K. Schaffner
Crestville Hills, Kentucky

BRIEFS FOR APPELLEE/CROSS-APPELLANT:

Greta Hoffman Walker
Florence, Kentucky

Thomas Anthony Rauf
Covington, Kentucky