**Mary L. SHIVELY, Appellant**

v.

**Benjamin S. SHIVELY, Appellee.**

**No. 2006–CA–000573–MR.**

Court of Appeals of Kentucky.

Sept. 7, 2007.

Melanie Straw–Boone, Louisville, KY, for appellant.

Thomas E. Roma, Jr., Sarah J. Martin, Louisville, KY, for appellee.

Before DIXON, HOWARD, and THOMPSON, Judges.

## OPINION

THOMPSON, Judge.

Mary Levan Shively and Benjamin Spottswood Shively (Ben) were married in 1995 and separated on October 31, 2004. Mary filed for a dissolution of marriage on November 23, 2004. The Jefferson Family Court rendered a decree of dissolution on July 15, 2005, and on August 15, 2005, entered a judgment awarding joint custody of the parties two minor children to the parties with Ben named as the primary residential custodian. On October 28, 2005, the court entered findings of fact, conclusions of law, and a supplemental decree which divided the parties' non-marital and marital property and allocated the parties' debts. In her appeal, Mary argues that the family court did not divide the marital property in just proportions in accordance with KRS 403.190. We find no error and affirm.

Both parties agree that the family court properly divided all marital assets owned by the parties as of October 31, 2004, but disagree as to the court's division of property earned between that date and the date that the decree was entered. At the center of the dispute is the income earned by Ben after his graduation from law school and subsequent employment at a law firm.

In the fall of 1996, Ben began attending the University of Louisville Law School. His employer, Brown & Williamson, paid Ben's tuition and permitted him time from work to study and to attend class. Ben testified that he studied at night after the children were asleep and studied for finals using vacation time while the children were at school. After his graduation, in 2003 Ben began working for the law firm, Parker and O'Connell, as a non-equity partner. He did not receive a salary or benefits from the firm but was paid a percentage of the fees paid for the work he performed or generated. The majority of his income came from the fees paid by Brown & Williamson after it merged with RJ Reynolds and was moved to Winston–Salem, North Carolina.

In the year 2004, Ben worked almost exclusively for Brown & Williamson assisting in the closing of the Louisville office. As a result, his income increased drastically. In 2004, he earned $544,689.32. As of June 13, 2005, he had earned $322,134.13 for the year 2005 and had $109,385.03 in accounts receivables. At the hearing held in July 2005, he testified that his work for Brown & Williamson was then minimal and that he was focusing on construction law in his new practice.

Mary is a senior tax manager with Deliotte & Touche and earns approximately $115,000 per year. During tax season, she often works more than forty hours per week and travels out of town frequently.

There was evidence that both parties contributed to the care of the children and to maintaining the household. However, there was testimony from acquaintances of the couple that Ben was the primary caregiver and housekeeper.

At the time of trial, the parties had accumulated a substantial marital estate which, excluding the martial residence and retirement accounts with unknown values, was valued at $1,137,316. Because of the court's decision not to equally award the amounts earned by the parties after their October 31, 2004 separation, the total amount awarded to Mary was $394,339 and to Ben, $676, 391. In making its award, the court concluded that based on KRS 403.190(1) all property acquired by Ben and Mary from the date of the marriage until the date of the decree was marital property.

When it divided the property acquired after the date of separation, the court considered the factors contained in KRS 403.190(1) and concluded that:

> Equal distribution of the marital property and debt as of October 31, 2004, will leave both parties of the ten-year marriage in good economic circumstances. The Court finds that it is "just" to divide the marital property by allowing each party to keep the income each party *earned* after October 31, 2004 and the assets purchased with those earnings. Assets owned prior to October 31, 2004 and earnings on those assets will be distributed equally as of the last known valuation date. (emphasis original).

Mary argues that the division of the marital property earned after October 31, 2004, was not in just proportions and that the trial court erred when it distributed those assets differently than the pre-separation marital assets. Additionally, she contends that no consideration was given to her contribution to Ben's law degree.

In *Stallings v. Stallings*, 606 S.W.2d 163 (Ky.1980), the court held that all property acquired during a period of separation is marital unless it fits within one of the exceptions set out in KRS 403.190(2) and must be valued as of the date of the dissolution decree. However, the court did not, as Mary suggests, require that all property acquired after the date of separation be divided in conformity with the division of that acquired prior to the separation or that it be divided equally. *Stallings* mandates that the post-separation marital property be divided in "just proportions" after consideration of the factors set out in subsection KRS 403–190(1)(a)–(d). *Id.* at 164. Thus, on remand, the trial court in that case was given the following guidance:

> On remand, in distributing the marital property the trial court shall consider the factors in KRS 403.190(1)(a) through (d). One of these factors is the "contribution of each spouse to acquisition of the marital property, including contribution of a spouse as homemaker." In this respect, the concept of "joint or team effort" will apply to the property in issue because it is marital property.
>
> It should be noted, however, that the "contribution of a spouse as a homemaker" does not necessarily cease when the other spouse leaves, especially when minor children remain with the homemaker-spouse. Although she may no longer be providing services directly to her spouse, she may be assisting him by caring for his children, thus continuing to enhance to some degree his ability to earn a living.

*Id.* at 164. In following the mandate in *Stallings*, the trial court found that the property acquired after the separation was marital and then applied the statutory factors set forth in KRS 403.190. Thus, the question is whether the division of the property was an abuse of discretion.

*Cochran v. Cochran,* 746 S.W.2d 568, 570 (Ky.App.1988).

The trial court relied on Mary's testimony that after the separation she no longer contributed toward the payment of the utilities or the mortgage on the marital home and that both parties made contribution as homemakers. Further, both parties were awarded considerable assets accumulated during the marriage and each earns a substantial income. During the parties' separation Ben earned a considerable amount above that earned during the same period by Mary. With the loss of Brown & Williamson as a client, his income will likely drop substantially while he establishes his new law practice.

Mary asserts that the trial court failed to consider her contribution toward Ben's law degree when dividing the post-separation assets; the trial court's conclusions, however, refute her assertion. Specifically, the court noted that Brown and Williamson paid for Ben to attend law school and that he went to school during the workday. During this time, he continued to do household chores and participate in caring for the children. Mary continued to work and advance her own career.

A professional degree is not marital property but can be considered an asset of the marriage in determining the parties' respective contributions when the court is dividing marital property. *Schmitz v. Schmitz,* 801 S.W.2d 333, 336 (Ky.App. 1990). The trial court appropriately considered Mary's claim that she contributed toward Ben's law degree and, after considering the evidence, rejected her claim. Brown & Williamson paid for Ben's degree, and he obtained the degree without a break in his employment, continued his parenting duties while in school, and Mary continued to advance her career.

Our review of its findings and the record before us, we cannot find an abuse of discretion to warrant reversal.

The judgment of the Jefferson Circuit Court is affirmed.

ALL CONCUR.