RENDERED:  SEPTEMBER 10, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0707-MR

LISA THIELMEIER                                                          APPELLANT

v.       APPEAL FROM JEFFERSON CIRCUIT COURT
         HONORABLE TARA HAGERTY, JUDGE
         ACTION NO. 17-CI-500023

KENNETH THIELMEIER                                                      APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CALDWELL, DIXON, AND L. THOMPSON, JUDGES.

THOMPSON, L., JUDGE:  Lisa Thielmeier appeals from orders of the Jefferson

Circuit Court involving the allocation of marital property, maintenance, and

attorney fees in a divorce proceeding.  Appellant argues that the trial court erred in

its valuation and allocation of a marital business.  Appellant also claims that the

trial court erred in the allocation of a retirement account, erred in its decision not to

award her additional attorney fees, and erred in calculating her award of maintenance. Finding no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

Appellant and Kenneth Thielmeier were married on July 19, 1985. They have been separated since 2016, but Appellee did not leave the marital residence until April of 2017. They have six children, one of whom is still a minor. The parties agreed to joint custody of the minor child and Appellant is the primary residential parent. At the time of the orders which are being appealed, Appellant and Appellee were both 57 years old.

Appellee is an anesthesiologist who is employed by, and a part owner of, Anesthesiology Consultants Enterprises, Inc. (hereinafter referred to as ACE). Appellee and Dr. Patrick Shanahan founded ACE in 2008 and each owned 50% of the business. Over the years, other physicians were brought into the practice and allowed to become part owners. When this happened, Appellee and Dr. Shanahan's ownership percentage would decrease. At the time of the parties' separation, Appellee owned 26% of ACE. Dr. Shanahan retired in 2018 and he was bought out by the remaining partners pursuant to the terms of the partnership agreement. When Dr. Shanahan retired, Appellee's shares increased to 35.14%.

Appellant is not employed outside the home, but she has a bachelor's degree in elementary education and a master's degree in guidance counseling.

-2-

Appellant was a teacher prior to the birth of the parties' children; however, once the first child was born, Appellant became a stay-at-home mother and cared for the children.

The parties agreed to most issues regarding the division of marital assets. The only issues the trial court ruled upon, and which are relevant to this appeal, were: the valuation and allocation of Appellee's interest in ACE; the allocation of Appellee's ACE retirement account; the amount of attorney fees to award Appellant; and the amount of maintenance to award Appellant.

Multiple witnesses testified regarding the valuation of ACE. Ryan Nunnelly, ACE's business manager, testified that he had been with ACE since its inception. Mr. Nunnelly is not employed by ACE, but provides contracted management services through an independent company. Mr. Nunnelly testified that the partnership agreement sets forth a buyout provision for an owner's interest in the business. The provision indicates that the buyout amount is 93% of the net collectible accounts receivable. That amount is then paid to the leaving partner in proportion to the ownership interest of said partner. Mr. Nunnelly testified that when Dr. Shanahan left ACE in June of 2018, he owned 26% of the company, which is the same amount Appellee owned prior to the parties' separation. Dr. Shanahan received $209,721 for his share of ACE.

The trial court also appointed Blue and Company, LLC to determine the value of ACE. Blue and Company is an accounting, tax, and consulting firm. Rob Kester testified for Blue and Company. Mr. Kester is a certified public accountant, is accredited in business valuation, and is certified in financial forensics. Mr. Kester testified regarding the different methods of valuing a business and which method he ultimately chose to use. Mr. Kester testified that Appellee's 26% interest in ACE would be worth $133,120.

Appellant also hired her own valuation expert, Roman Basi. Mr. Basi is an attorney and certified public accountant with the Center for Financial, Legal, and Tax Planning, Inc. Mr. Basi testified as to his method of determining the value of ACE, and it was his opinion that Appellee's interest in ACE was $1,350,456.

Appellee also testified as to his belief in the value of his share of ACE. He believed his share of ACE should be valued according to the buyout provision in the partnership agreement.

The trial court stated that it found Mr. Kester's testimony about the method of calculating the value of ACE most persuasive, but relied on Appellee's testimony that the value should be based on the partnership agreement. The trial court valued Appellee's 26% interest in ACE at $209,721. The trial court also held that the 9.14% share increase which occurred after the parties separated would be

awarded solely to Appellee.  Appellant was awarded $104,860.50 for her share of ACE.

As for the ACE retirement account, Appellee requested that the account be divided equally between the parties as of May 1, 2017, which was shortly after he left the marital residence.  He requested that he receive 100% of the contributions to the account after May 1, 2017.  The trial court agreed with Appellee's request and awarded Appellant one half of the account as of May 1, 2017.

The trial court also considered Appellant's request for attorney fees. Both parties submitted affidavits regarding attorney fees.  At the time of the hearing on these issues, Appellant owed $23,673.37 to her attorney.  She had also borrowed $17,500 from her brother to pay for expert witnesses.  Appellant requested that Appellee be required to pay the remainder she owed to her attorney and to repay the money she borrowed from her brother.  Throughout litigation, Appellee spent $47,108 for his attorney and advanced $33,074 to Appellant's attorney.  In addition, Appellee paid $16,630 to Blue and Company and $3,100 to Linda Jones, an expert appointed by the court to evaluate Appellee's ability to work and earn an income.  The trial court ultimately declined to award Appellant additional attorney fees.

Finally, the trial court considered the issue of maintenance. The court took into consideration Appellant's degrees, teaching license, age, and the fact that she has not worked outside the home since 1990. Ms. Jones, the vocation evaluator appointed by the court, testified that Appellant could obtain immediate employment as a substitute teacher or teacher's aide. Ms. Jones also testified that if Appellant took some undergraduate courses to refresh her teaching skills, she could obtain full-time employment as a teacher.

The court also considered the health of the parties' minor child. The child has a condition called Moyamoya disease which has required hospitalizations and surgeries. The child frequently misses school because of the condition and has regular appointments with doctors and therapists. Appellant does not believe she can work full time because she is the primary caretaker of the child and must be available at a moment's notice. The court found it was unrealistic for Appellant to work a full-time teaching job due to the child's condition.

Appellant and Appellee provided the court with a list of monthly expenses. Appellant requested maintenance in the amount of $20,225.17 per month. The trial court considered Appellant's request, but found it excessive. The court rejected some of Appellant's monthly expenses for various reasons. For example, the court rejected $1,591 of Appellant's monthly expenses because they went toward the expenses of the adult children. The court awarded Appellant

$12,500 per month in maintenance. The award was for a duration of eight years. After eight years, Appellant would be eligible for retirement and could then gain access to the retirement benefits she was awarded.

Appellant then filed motions for more specific findings and to alter, amend, or vacate the court's order. The trial court entered an order indicating it believed it set forth sufficient findings of fact to support its decision. The court also denied the motion to alter, amend, or vacate. This appeal followed.

## ANALYSIS

We will first address Appellant's argument regarding the valuation and allocation of ACE.

> [Kentucky Revised Statutes (KRS)] 403.190, which governs the distribution of marital property, mandates that the trial court divide marital property in "just proportions." The statute lists the factors the trial court is required to consider in dividing marital property: each spouse's contribution to the acquisition of marital property; the value of the property set apart to each spouse; the duration of the marriage; and the economic circumstances of each spouse at the time of the division.

*Muir v. Muir*, 406 S.W.3d 31, 35 (Ky. App. 2013) (citation omitted).

> *Stallings v. Stallings*, 606 S.W.2d 163 (Ky. 1980), permits the family court to consider the joint efforts of the parties in determining the "just proportions" division. "Just proportions" does not mean that the property must be equally divided, but only that a consideration of the factors in KRS 403.190 has been made.

*Id.* at 36.

> It has long been recognized that the reviewing court cannot disturb the findings of the trial court unless those findings are clearly erroneous. How property is divided is well within the sound discretion of the trial court. Without an abuse of discretion, the reviewing court should uphold the trial court's division of property. A family court has broad discretion with respect to testimony presented, and may choose to believe or disbelieve any part of it. It is also entitled to make its own decisions regarding the demeanor and truthfulness of witnesses, and a reviewing court is not permitted to substitute its judgment for that of the family court unless its findings are clearly erroneous.

*Id.* at 34 (citations omitted). Here, we must first examine the court's findings regarding the valuation of ACE under the clearly erroneous standard of review. Then, we must determine if the court abused its discretion in the way it allocated ACE. "The task of the appellate court is to determine whether the trial court's approach reasonably approximated the net value of the partnership interest." *Clark v. Clark*, 782 S.W.2d 56, 59 (Ky. App. 1990) (citation omitted).

As to the value of ACE, Appellant argues that the valuation used by the trial court was a "gross undervaluation." We believe the court was not clearly erroneous in valuing Appellee's 26% share in ACE at $209,721. The trial court heard testimony from three experts and Appellee regarding the value of ACE. The trial court found the court-appointed expert's testimony was the most reliable; however, the court chose to value ACE pursuant to Appellee's testimony that the business should be valued based on the partnership agreement. This choice

increased the value of ACE by over $76,000 and increased Appellant's share of the business by over $38,000. The trial court heard multiple witnesses testify about the value of ACE and the court's decision was a reasonable approximation of the value of the business. This valuation was thoroughly discussed by the trial court and we find no error.

As to Appellant's share of ACE, we also find no error. The trial court considered ACE to be marital property, but only awarded Appellant half of the 26% share Appellee had upon separation. Appellant argues that she should have been awarded half of the 35.14% share Appellee had upon the entry of the divorce decree.

Appellee argued before the trial court that Appellant should only be allocated a portion of those assets acquired before the date of separation in April of 2017. Appellee relied on KRS 403.190(1)(a) in making this argument. KRS 403.190(1)(a) states that the court should consider the "[c]ontribution of each spouse to acquisition of the marital property, including contribution of a spouse as homemaker[.]" Appellee claimed that since he moved out of the marital residence in April of 2017, Appellant did not contribute to the 2018 increase in his shares of ACE. The trial court agreed.

We find no abuse of discretion with the trial court's decision to only allocate to Appellant a pre-separation portion of ACE. The court considered the

factors in KRS 403.190(1) and found KRS 403.190(1)(a) relevant.[1]  This Court has found similar allocations appropriate.  *See Shively v. Shively*, 233 S.W.3d 738 (Ky. App. 2007); *Folk v. Folk*, No. 2009-CA-000255-MR, 2012 WL 327852 (Ky. App. Feb. 3, 2012); and *Story v. Story*, No. 2008-CA-001301-MR, 2009 WL 3486667 (Ky. App. Oct. 30, 2009).

We now move on to Appellee's ACE retirement account.  As previously stated, Appellee requested that the value of the account be divided equally until after he left the marital house.  Appellee argued that from that point forward, he should be allocated 100% of the value of the account because Appellant was no longer contributing to the marital unit or contributing to the increase in the account's value.  He again cited to KRS 403.190(1)(a).  The court agreed to this allocation; however, Appellant believes this was an abuse of discretion because any increase in the account's value prior to the decree was marital property.

Again, we find no error.  The court considered the KRS 403.190(1) factors when deciding what a just allocation of this account would be.  The court determined that Appellant was no longer contributing to the increase in the

---

[1] While the trial court did not specifically cite to KRS 403.190 in the section of the order discussing the allocation of ACE, it did cite to the statute earlier in the order when discussing the division of marital property in general.

retirement account's value after Appellee left the marital home.  We cannot say this was an unreasonable conclusion.

Next, we will consider Appellant's argument regarding attorney fees. KRS 403.220 states:

> The court from time to time after considering the financial resources of both parties may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under this chapter and for attorney's fees, including sums for legal services rendered and costs incurred prior to the commencement of the proceeding or after entry of judgment.  The court may order that the amount be paid directly to the attorney, who may enforce the order in his name.

The award of attorney fees is reviewed for abuse of discretion.  *Smith v. McGill*, 556 S.W.3d 552, 556 (Ky. 2018).  Appellant claims that it was an abuse of discretion in not requiring Appellee to pay for her attorney fees.  She argues that Appellee's salary affords him a surplus of income each month, but she is unemployed and will be forced to take out a loan to pay her attorney.  We find no abuse of discretion as to the award of attorney fees.  The trial court considered the fact that Appellee had already advanced over $30,000 to Appellant's attorney and had paid over $19,000 for court-appointed experts.  The court also considered how much Appellant paid for her own experts and the amount she borrowed from her brother.  The court decided each person should be responsible for his or her remaining attorney fees and that Appellee should not be required to pay for

Appellant's experts. While Appellee may have more financial resources than Appellant, he has already expended a significant amount toward Appellant's attorney fees. We cannot say that the court's refusal to award additional attorney fees was unreasonable.

Appellant's final argument on appeal concerns the maintenance award. The trial court awarded Appellant $12,500 per month in maintenance for a period of eight years. Appellant argues that the amount of the award and the duration are abuses of discretion.

> KRS 403.200(1) provides that a court may grant maintenance only if it finds the spouse seeking it "[l]acks sufficient property, including marital property apportioned to him, to provide for his reasonable needs" and "[i]s unable to support himself through appropriate employment[.]" "While the award of maintenance comes within the sound discretion of the trial court, a reviewing court will not uphold the award if it finds the trial court abused its discretion or based its decision on findings of fact that are clearly erroneous." *Powell v. Powell*, 107 S.W.3d 222, 224 (Ky. 2003). *See also Brenzel v. Brenzel*, 244 S.W.3d 121, 126 (Ky. App. 2008) ("An award of maintenance and the amount are within the discretion of the trial court."). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Sexton v. Sexton*, 125 S.W.3d [258, 272 (Ky. 2004)], citing *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999).
>
> If an award of maintenance is found to be appropriate pursuant to KRS 403.200(1), a court must then consider all relevant factors in determining the amount and duration of maintenance pursuant to KRS

403.200(2). These factors include the spouse's financial resources, the time needed to obtain sufficient education or training, the standard of living during the marriage, the duration of the marriage, the age and condition of the spouse seeking maintenance, as well as the ability of the paying spouse to meet his needs. Similarly, "the amount and duration of maintenance is within the sound discretion of the trial court." *Weldon v. Weldon*, 957 S.W.2d 283, 285 (Ky. App. 1997).

*McVicker v. McVicker*, 461 S.W.3d 404, 420-21 (Ky. App. 2015).

We find no error with the court's maintenance award. The trial court considered the maintenance factors listed in KRS 403.200(1) and (2). The court considered the age of the parties and their employment history. The court believed that, based on Appellant's lack of current work experience and the ailment of the minor child, it would be unreasonable to require Appellant to obtain a full-time job. The court did believe she could obtain part-time employment and imputed an income to her of $1,500 per month. The court also considered and discussed the parties' monthly expenses and Appellee's ability to pay maintenance and meet his own expenses.

The court ultimately held that Appellant was entitled to maintenance based on her reasonable monthly expenses.[2] The court believed that Appellee could obtain a part-time job to supplement her income. The court awarded

---

[2] As stated previously, the trial court deducted some expenses from her monthly budget due to the court's belief they were unnecessary.

Appellant $12,500 per month in maintenance. We do not believe this amount was an abuse of discretion. The court considered the required statutory factors, Appellant's ability to supplement her income with a part-time job, and the significant amount of marital property she will retain after the divorce.

As for the duration, the court awarded maintenance for a period of eight years. The court held that after eight years, Appellant would reach retirement age and would be able to access the money she received from the marital retirement accounts. The court also found that this duration was appropriate based on the length of the marriage and Appellee's support of Appellant during their separation. We find no abuse of discretion as to the duration of the maintenance award.

## CONCLUSION

Based on the foregoing, we affirm the judgment of the trial court and affirm all aspects of the orders being appealed.

DIXON, JUDGE, CONCURS.

CALDWELL, JUDGE, DISSENTS IN PART AND FILES SEPARATE OPINION.

CALDWELL, JUDGE, DISSENTING IN PART: I must, in part, respectfully dissent. I do not disagree with the standard of review as set out by the majority that the family court's finding of fact cannot be set aside unless they are

clearly erroneous. However, I disagree that the conclusion reached by the family court in applying some of those facts was not an abuse of discretion; it was.

We consider whether the factual findings are supported by substantial evidence, whether the correct law was applied, and whether the family court abused its discretion–keeping in mind the family court's unique opportunity to weigh the evidence and assess the credibility of witnesses:

> Since the family court is in the best position to evaluate the testimony and to weigh the evidence, an appellate court should not substitute its own opinion for that of the family court. If the findings of fact are supported by substantial evidence and if the correct law is applied, a family court's ultimate decision regarding custody will not be disturbed, absent an abuse of discretion. Abuse of discretion implies that the family court's decision is unreasonable or unfair. Thus, in reviewing the decision of the family court, the test is not whether the appellate court would have decided it differently, but whether the findings of the family court are clearly erroneous, whether it applied the correct law, or whether it abused its discretion.

*Coffman v. Rankin*, 260 S.W.3d 767, 770 (Ky. 2008). While the issues before us are not regarding custody, the standard is the same. In applying the law herein, the family court abused its discretion.

"The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999). The Oxford English

Dictionary's definition of "arbitrary" is, "Based on random choice or personal whim, rather than any reason or system." https://www.lexico.com/en/definition/arbitrary (last visited Sept. 9, 2021). Black's Law Dictionary, in reference to a judicial decision, defines "arbitrary" as, "founded on prejudice or preference rather than reason or fact." *Arbitrary*, BLACK'S LAW DICTIONARY (11th ed. 2019). For a trial court's decision to not appear arbitrary, it must be supported by the facts and the law. And the facts and law supporting the decision must be made clear in its decision.

Particular to this action, the facts as found by the trial court and supported by substantial evidence, do not support an allocation of marital assets being based on the date the Appellee decided to move out of the marital home. *Stallings v. Stallings*, 606 S.W.2d 163 (Ky. 1980), is still good law and its holding is that absent a decree of legal separation or dissolution, assets acquired by the parties are marital, even if acquired after one of the parties leaves the marital home.

> [I]n distributing the marital property the trial court shall consider factors in KRS 403.190(1)(a) through (d). One of these factors is the "contribution of each spouse to acquisition of the marital property, including contribution of a spouse as homemaker." In this respect, the concept of "joint or team effort" will apply to the property in issue because it is marital property.
>
> It should be noted, however, that the "contribution of a spouse as a homemaker" does not necessarily cease

-16-

> when the other spouse leaves, especially when minor children remain with the homemaker-spouse.  Although she may no longer be providing services directly to her spouse, she may be assisting him by caring for his children, thus continuing to enhance to some degree his ability to earn a living.

*Id.* at 164.

KRS 403.190(1)(a)-(d) sets out what the family court is to consider when allocating marital assets, including specifically contribution of a spouse as homemaker.  In the case *sub judice,* the family court, while stating it had considered the factors in KRS 403.190(1)(a)-(d), then proceeded to divide the marital assets as of the date the Appellee vacated the marital home, giving him 100% of the assets acquired thereafter.  Stating that the family court has considered the factors, without a showing of its analysis and the bases for its conclusion, is simply not enough.  This is particularly true when the outcome of the family court's ruling is in direct opposition to its own finding of fact.

One of the family court's findings of fact as to homemaking duties was that the parties have a minor child with significant medical needs.  His needs are in fact so significant that the Appellant is unable to work outside the home.  This is the finding of the family court.  Therefore, while Appellee works, and enjoys the fruit of his labor, he is only able to do so because someone else, the Appellant, provides the necessary care and home for his child.  Yet, the family court awarded 100% of the assets accumulated from his employment after he

-17-

moved out of the marital home, as if the Appellant did not contribute anything. This is unreasonable, unfair, arbitrary, and unsupported by the facts or sound legal principles; it is an abuse of discretion.

Further, the trial court's reliance on the unpublished opinion in *Story v. Story*, No. 2008-CA-001301-MR, 2009 WL 348666 (Ky. App. Oct. 30, 2009), is misplaced. This Court held in *Story* that while the trial court did not necessarily make ideal factual findings with respect to the factors set forth in KRS 403.190, it did set forth that those factors were considered, and the record provided no reason to believe otherwise. In the case *sub judice*, the record, and the family court's own finding of fact as to the needs of the parties' child and the role Appellant played in ensuring those needs were met, clearly show that the family court could not have considered Appellant's contribution as a homemaker as required by KRS 403.190(1)(a).

Further, there is a sufficient number of published opinions that can be referenced where marital assets were not equally divided to support a proposition that equitable division does not equate to equal division. However, in each of those, there were sufficient facts as found and provided by the trial court to demonstrate why the unequal division was still equitable; something that is missing in the family court's opinion in the present action. *See Shively v. Shively*, 233 S.W.3d 738 (Ky. App. 2007); *Russell v. Russell*, 878 S.W.2d 24 (Ky. App. 1994).

I would reverse the family court and award an equal division of the value of ACE and the ACE retirement account as of the date of the decree of dissolution.

Further, I agree with Appellant that it is arbitrary and unfair that Appellee was able to use marital funds to pay all of his attorney fees and legal expenses of the divorce action while Appellant is relegated to having to borrow funds and use post-divorce assets awarded to her to pay her fees and expenses. Again, while the family court is entitled to deference on its findings of fact, how those facts are applied to the law is reviewed for an abuse of discretion. Like the allocation of the marital assets of ACE and the ACE retirement fund, the family court again provides no analysis of how its ultimate ruling was determined by the facts. Additionally, Appellee, with regard to attorney fees as well as the division of the marital assets, filed appropriate post-trial motions seeking any additional findings from the family court to support its rulings, which the family court declined to provide.

Regarding the remainder of the arguments raised by Appellant, the family court sufficiently provided facts and analysis to support its decisions regarding the valuation of ACE, its determination of an appropriate award of maintenance, and its division of marital debt. I would agree with the majority opinion herein as to those issues.

BRIEF FOR APPELLANT:                    BRIEF FOR APPELLEE:

John H. Helmers, Jr.                    Melanie Straw-Boone
Louisville, Kentucky                    Peter J. Catalano
                                        Louisville, Kentucky