RENDERED: APRIL 17, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-1327-MR

BRIDGETT F. WELLS                           APPELLANT

|  |  |
|---|---|
| v. | APPEAL FROM MORGAN CIRCUIT COURT, FAMILY DIVISION<br>HONORABLE DAVID D. FLATT, SPECIAL JUDGE<br>ACTION NO. 21-CI-00133 |

BRIAN C. WELLS                              APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: ACREE, CALDWELL, AND CETRULO, JUDGES.

CALDWELL, JUDGE: Bridgett F. Wells ("Bridgett") appeals from a post-divorce order ruling that her ex-husband, Brian C. Wells ("Brian") would receive 95 percent of nearly $212,000.00 in marital property. The property was acquired after the parties separated but before they divorced. The parties did not obtain a decree of legal separation, and the divorce decree did not address how this marital

property—consisting of over $200,000.00 in income tax overpayments—was to be divided. For the reasons set forth herein, we AFFIRM.

**FACTS**

Bridgett and Brian were married in October 2009 and separated in October 2021. They have three minor children. Bridgett filed for divorce in November 2021. In December 2021, the family court entered an order providing the parties would have joint custody and equal timesharing. Neither party was ordered to pay temporary child support. However, the court ordered Brian to pay Bridgett $5,000.00 per month in temporary maintenance.

In November 2023, the family court entered a divorce decree incorporating a settlement agreement recently signed by the parties. The parties agreed to joint custody and equal timesharing. They also agreed that no maintenance would be paid henceforth, but that Brian would pay Bridgett $3,250.00 per month in child support. The parties agreed that Brian would pay for expenses including the children's health insurance and any medical expenses not covered by insurance.

The parties further agreed that Brian would receive the marital residence and would pay the mortgage and taxes on the home. They agreed each party would retain his/her non-marital personal property and all non-retirement accounts in their individual names. They also agreed Bridgett would retain her

own retirement and would also receive one-half of Brian's retirement as valued on December 31, 2022, offset by her retirement and any non-marital portion of Brian's retirement.

Under the settlement agreement, Brian retained his interests in the Wells Group companies. (Estimates prepared for the parties valued Brian's ownership interest in the Wells Group companies at between two and four million dollars. The family court later found that, under the agreement, Brian also retained his ownership interest, including a non-marital portion, in the Wells Building— which was valued at over $900,000.00.)

The agreement called for Bridgett to receive a $500,000.00 payment as a lump sum settlement for her support, property rights, or other claims. It also allowed her to claim the children as her dependents on post-divorce federal and state income tax returns.

The agreement also provided that each party had made full and candid disclosures to the other and had not withheld pertinent information. Also, the agreement stated each party must deliver to the other those documents necessary to accomplish the intentions reflected in the agreement.

The agreement also stated: "The parties filed joint federal and state income tax returns through the 2022 tax year. Husband [Brian] agrees to pay and to indemnify wife [Bridgett] from any taxes due for income taxes during those

years.  Beginning the 2023 tax year each will file separate returns."  (Record on Appeal ("R"), p. 498; also attached in Tab 1 to the Appellant Brief's Appendix).[1]

Despite the statement in this agreement (executed in the fall of 2023) indicating the parties had already filed their joint tax return for the 2022 tax year, it turned out that the parties had still not filed their joint 2022 return as of early 2024.

In February 2024, Brian filed a motion requesting that Bridgett be ordered to sign the parties' joint 2022 federal and state income tax returns prepared by an accountant.  Brian acknowledged that he had made payments in 2022 and 2023 for 2022 income taxes according to an accountant's estimates of the income taxes due for each quarter.  (He admitted that he paid the estimated taxes due for some quarters of 2022 in 2023.)  He also noted that according to the prepared tax returns, he had made income tax overpayments totaling nearly $212,000.00 for tax year 2022.  Brian argued he should receive the entirety of the overpayments.

In a prehearing memorandum, Brian pointed out the parties were separated, both employed, and had equal timesharing with the children during

---

[1] The first item in the appendix to an appellant brief after the index should be the order or judgment on appeal.  *See* Rules of Appellate Procedure ("RAP") 32(E)(1)(a) ("The appellant shall place the judgment, opinion, or order under review immediately after the appendix list so that it is most readily available to the court.").  The order on appeal here is the order entered by the family court on May 13, 2024, dividing the marital property at issue, which was placed in Tab 3 of the Appendix to the Appellant Brief.  We also note the index for the appendix to Brian's brief does not state where in the record we may locate his appended documents.  *See* RAP 32(B)(6); RAP 32(E)(1)(d).  We encourage counsel to carefully review the Rules of Appellate Procedure and additional briefing resources available on our court website, https://www.kycourts.gov/Courts/Court-of-Appeals (last accessed Mar. 20, 2026).

2022. He also emphasized that Bridgett was then receiving $5,000.00 a month in temporary maintenance. He also stressed that in addition to the $500,000.00 lump sum payment, Bridgett had also received approximately $71,000.00 in another account—representing one-half of the parties' joint 2021 tax refund. He asserted Bridgett had not contributed to his payment of estimated taxes for 2022.

Bridgett filed a response to Brian's motion. She pointed out the settlement agreement, which the parties signed in October 2023, erroneously stated the parties' 2022 tax return had already been filed. She alleged that she had relied on Brian's representations that the 2022 tax return had already been filed. She asserted she had not previously been told about Brian's making tax overpayments of almost $212,000.00 until a proposed tax return was recently forwarded to her attorney. She suggested the overpayments indicated Brian tried to keep the existence of those funds unknown to her. She argued Brian should not be allowed to benefit from such actions to her detriment.

In late March 2024, the family court conducted an evidentiary hearing on Brian's motion concerning the tax overpayments. Both Brian and Bridgett testified at the hearing. The court sustained Brian's objection to Bridgett's testimony about her contributions as a homemaker prior to the separation, but Bridgett offered such testimony by avowal.

Bridgett testified by avowal that she had been a homemaker during earlier years of the marriage, although she had been employed in more recent years. She also testified to often being the only adult home with the children while Brian frequently traveled for work during the early years of their marriage. She asserted that her staying home with the children so that Brian could travel for work in earlier years allowed him to build his business and to maximize his earnings for later years (including 2022, when the parties were separated).

Bridgett also testified that if she had filed her tax returns separately, she believed her earnings would have been subject to a lower tax rate than that which applied to the parties' joint 2022 return.

The court took the matter under advisement at the end of the hearing.

In May 2024, the court issued an order requiring both parties to sign and file the prepared 2022 tax return. The court determined the tax overpayments were marital property. The court acknowledged that all other marital assets had been divided according to the terms of the parties' settlement agreement. The court declined to revisit the settlement agreement's terms. However, since the settlement agreement did not address the tax overpayments and the parties did not agree about how these funds should be distributed, the court proceeded to determine how to divide the tax overpayments. The court concluded it was just for

5 percent of the overpayments ($10,600.00) to be distributed to Bridgett and the rest (95 percent) to Brian.

Bridgett filed a motion to alter, amend, or vacate. After the court denied this motion, Bridgett filed a timely appeal.

Further facts will be provided as needed in our analysis.

## ANALYSIS

KRS[2] 403.190 states that upon divorce, a court must assign each spouse's non-marital property to him/her. KRS 403.190 further provides the court must divide the marital property in just proportions, considering certain listed factors, and it indicates that property acquired during the marriage is presumably marital property except for when certain exceptions are shown:

> [The court] shall also divide the marital property without regard to marital misconduct in just proportions considering all relevant factors including:
> (a) Contribution of each spouse to acquisition of the marital property, including contribution of a spouse as homemaker;
>
> (b) Value of the property set apart to each spouse;
>
> (c) Duration of the marriage; and
>
> (d) Economic circumstances of each spouse when the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to the spouse having custody of any children.

---

[2] Kentucky Revised Statutes.

(2) For the purpose of this chapter, "marital property" means all property acquired by either spouse subsequent to the marriage except:

(a) Property acquired by gift, bequest, devise, or descent during the marriage and the income derived therefrom unless there are significant activities of either spouse which contributed to the increase in value of said property and the income earned therefrom;

(b) Property acquired in exchange for property acquired before the marriage or in exchange for property acquired by gift, bequest, devise, or descent;

(c) Property acquired by a spouse after a decree of legal separation;

(d) Property excluded by valid agreement of the parties; and

(e) The increase in value of property acquired before the marriage to the extent that such increase did not result from the efforts of the parties during marriage.

(3) All property acquired by either spouse after the marriage and before a decree of legal separation is presumed to be marital property, regardless of whether title is held individually or by the spouses in some form of co-ownership such as joint tenancy, tenancy in common, tenancy by the entirety, and community property. The presumption of marital property is overcome by a showing that the property was acquired by a method listed in subsection (2) of this section.

There is no dispute that the property at issue—the nearly $212,000.00 of income tax overpayments for tax year 2022—is marital property. *See* Appellee

Brief, page 4 ("Brian acknowledges the income tax overpayments are marital property under KRS 403.190").

As the family court essentially recognized, this property was acquired while the parties were still married despite their actual, but not legal, separation and no KRS 403.190(2) exception applied, so the property is marital. *See generally Stallings v. Stallings*, 606 S.W.2d 163, 163-64 (Ky. 1980). Thus, the family court was required to divide this marital property, which was not addressed in the settlement agreement or divided in the divorce decree, in just proportions.

**Standards of Review**

We review the family court's division of marital property for abuse of discretion and its factual findings for clear error. *Davis v. Davis*, 720 S.W.3d 622, 625 (Ky. App. 2025). Factual findings which are not supported by substantial evidence are clearly erroneous. *Id.* at 627.

"We review the family court's resolution of purely legal issues such as questions of statutory interpretation under the non-deferential *de novo* standard." *Id.* at 628.

With these standards in mind, we consider the parties' arguments.

**Family Court Did Not Issue Clearly Erroneous Factual Findings, Abuse its Discretion, or Fail to Follow Controlling Statutes and Precedent So We Must Affirm its Decision**

Bridgett contends on appeal that the family court failed to divide the property at issue in just proportions, especially since it refused to consider evidence of her pre-separation contributions as a homemaker. She also suggests the family court essentially rewarded Brian for hiding funds by ruling that 95 percent of the tax overpayments should be distributed to him. She contends the family court erroneously added to the economic disparities between the parties.

In response, Brian argues the family court did divide the property in just proportions as called for by KRS 403.190.

Brian asserts he paid 2022 income tax estimates according to the advice of his accountant, after previously paying the parties' joint 2021 tax liability. He emphasizes the substantial property Bridgett received under the settlement agreement. And he asserts she did not contribute to the payments for estimated taxes for 2022. He points out the family court considered the factors listed in KRS 403.190 in dividing the property. Brian also contends that the family court's factual findings are supported by the evidence and that the court's decision was consistent with controlling precedent.

Both parties' briefs discuss *Shively v. Shively*, 233 S.W.3d 738 (Ky. App. 2007). In *Shively*, this Court stated that marital property acquired after actual

(but not legal) separation did not have to be divided in the same manner as marital property acquired before the separation nor did such marital property have to be divided equally. *Id.* at 740 (discussing *Stallings*, 606 S.W.2d at 163). Instead, such property must simply be divided in just proportions considering the factors listed in KRS 403.190, including the parties' respective contributions to acquiring the property. This Court noted such contributions could include a spouse's contributions as a homemaker—which do not necessarily cease after separation because a homemaker would still assist the other spouse by caring for the children. *Shively*, 233 S.W.3d at 740 (quoting *Stallings*, 606 S.W.2d at 164).

The central dispute in *Shively* was whether the trial court had properly divided assets acquired between the parties' actual (but not legal) separation and their divorce, especially income earned by the husband during the separation. *Id.* at 739. The husband had graduated from law school during the marriage, several years before the separation. His earnings had "increased drastically" around the time of separation. *Id.*

Although the trial court in *Shively* divided marital assets acquired prior to separation equally, it did not divide marital assets acquired after separation equally. Instead, it ruled each spouse would retain his/her own income earned after the separation but before the divorce, as well as assets purchased with post-separation income. *Id.* at 740. Thus, the trial court divided the total marital estate

-11-

(excluding the marital residence and retirement accounts) of over one million dollars such that the wife received less than four hundred thousand dollars and the husband received nearly seven hundred thousand dollars. *Id.*

On appeal, the wife argued the trial court failed to consider her contributions towards the husband's law degree (obtained during the pre-separation portion of the marriage) when dividing assets acquired post-separation. *Id.* at 739-41. However, this Court upheld the lower court's rejection of this argument and affirmed the division of post-separation assets under the abuse of discretion standard. *Id.* at 741. We noted the lower court made findings on the required KRS 403.190 factors in dividing the assets. *Id.* at 740.

We also concluded the trial court had not abused its discretion. We noted the trial court relied on evidence that the wife no longer contributed to the payment of the mortgage and utilities for the marital home after separation and that both parties made contributions as homemakers. *Id.* at 741. We also noted both parties received substantial assets in the divorce, and both earned high salaries in their respective careers. We discerned no reversible error in the lower court's rejecting the wife's arguments about contributing to the husband's law decree based on its assessment of the evidence. We indicated the lower court construed the evidence to show that the husband's employer paid for him to attend law

school and that the husband continued to work and to care for the parties' child while he attended school and his wife "continued to advance her career." *Id.*

Brian contends that *Shively* supports the family court's decision to award the great majority of the marital property at issue—the tax overpayments—to him. Bridgett disagrees, asserting *Shively* is distinguishable because it involved two high-earning spouses and did not involve the same economic disparity between the two spouses as this case.[3]

In addition to both spouses' earning high wages in *Shively*, this case is significantly different in other respects. For example, the lower court in *Shively* had itself divided all marital assets—including both those acquired pre-separation and those acquired post-separation. *Id.* at 739. In contrast, all of Brian's and Bridgett's marital assets except for the income tax overpayments at issue were divided according to their settlement agreement.

Additionally, Bridgett certainly did not earn nearly as much money as either Shively's spouse or Brian. But Bridgett had also been receiving $5,000.00 monthly temporary maintenance during the parties' separation in addition to

---

[3] Bridgett acknowledges that the family court found that she faced much less favorable financial circumstances than Brian. However, she asserts the family court erroneously denied her a larger share of the property at issue simply because she had received substantial assets in the divorce. She suggests the family court failed to thoughtfully consider what a just division of this property would be.

receiving $500,000.00 to settle property and support claims pursuant to the settlement agreement.

This case is also distinct from *Shively* in that Bridgett has suggested that Brian attempted to hide assets with the nearly $212,000.00 in income tax overpayments. Nonetheless, although Bridgett also raised this suggestion to the family court, the court's factual findings indicate that it did not find Brian's testimony about the way he paid estimated taxes suspicious. For example, the family court found that both the Wells Group and its owners (including Brian) typically obtained extensions for filing tax returns and that this was a "normal practice for the business and owners for a period of years." The court also found the Wells Group distributed funds to Brian for estimated taxes and Brian would pay the estimated taxes after receiving such distributions, which the court described as "the historical practice" and "the practice for the 2022 tax estimates." (R, p. 550, see also Appendix 3 to Appellant Brief).[4]

---

[4] Brian's testimony suggested that changes in rules about claiming depreciation occurring between the time in which the accountant estimated the tax due and the deadline for filing tax returns might explain why overpayments of over $200,000.00 in income taxes were made. *See also* Appellee Brief, page 3, describing a portion of Brian's testimony as indicating that: "Brian's understanding of the reason for the significant over payment was that the company was able to take advantage of bonus depreciation that significantly reduced its taxable income." However, the family court did not discuss this testimony in its order dividing the property.

Essentially, the family court implicitly found Brian to be credible. We must defer to the family court's assessment of witnesses' credibility. *See* CR[5] 52.01 ("[D]ue regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses."). Moreover, based on our review of the record, the family court's factual findings are supported by substantial evidence and are not clearly erroneous.

Furthermore, we cannot say that the family court misapplied controlling authority or abused its discretion based on the record before us.

Despite this case being distinct from *Shively* in many respects, the principles expressed in *Shively*—that assets acquired during separation may be treated differently than assets required prior to separation and that a court does not have to divide marital assets 50/50 to divide them in just proportions—still apply. *See generally* 233 S.W.3d at 740-41.

And regardless of whether we or another court would have made the same decision, we discern no abuse of discretion. The family court made findings on the factors set forth in KRS 403.190(1). For example, it made findings about the parties' contributions to acquiring the marital property. *See* KRS 403.190(1)(a). Specifically, it found that Brian alone contributed to the tax overpayments and that Bridgett did not contribute to the overpayments as a

---

[5] Kentucky Rules of Civil Procedure.

-15-

homemaker or otherwise.[6] It made this finding at least in part because at the time the property was acquired, the parties were separated and had equal timesharing, and Bridgett was receiving temporary maintenance. The court also found the parties were both employed and kept their finances separate and Brian paid for various expenses including the parties' 2021 income tax liability, insurance and taxes on Bridgett's vehicles, and the mortgage, insurance, taxes and utilities for the marital residence.

In addition to making these findings, the court also acknowledged its duty to divide marital property in just proportions pursuant to KRS 403.190, and it cited *Shively*, 233 S.W.3d 738. The family court noted it was presented with a situation in which the parties had entered into a settlement agreement dividing the marital property except for the income tax overpayments at issue. The court found that a substantial disparity between the parties' financial circumstances still existed. But it also found that Bridgett had received substantial assets in the divorce and maintenance during the separation and that Brian was also responsible for paying other expenses on her behalf.

---

[6] The court also found that Bridgett received substantial assets in the divorce, including the $500,000.00 lump sum settlement payment. And the court made findings about the value of assets which Brian retained or received under the settlement agreement. *See* KRS 403.190(1)(b) (requiring consideration of "Value of the property set apart to each spouse"). The court found the parties had been married for fourteen years. *See* KRS 403.190(1)(c) (requiring consideration of the "Duration of the marriage"). Lastly, the court found that Brian's economic circumstances were much more favorable than Bridgett's. *See* KRS 403.190(1)(d) (requiring consideration of "Economic circumstances of each spouse when the division of property is to become effective").

-16-

Based on these factual findings, the court determined it was just for the income tax overpayments to be distributed 95 percent to Brian and 5 percent to Bridgett. While perhaps another court might find it more just to divide this property in different proportions, we discern no abuse of discretion in the family court's division of the marital property at issue under the unique facts of this case.

Moreover, we conclude that, under the unique facts of this case, any error in the family court's refusal to consider evidence of Bridgett's pre-separation contributions as a homemaker was harmless. CR 61.01. We express no opinion on whether, under different facts and circumstances, a court might properly consider evidence of pre-separation contributions as a homemaker when dividing marital assets acquired after an actual (but not legal) separation but prior to divorce.

Thus, we AFFIRM the family court's judgment. Further arguments raised in the briefs which we have not discussed herein have been determined to lack merit or relevancy to our resolving this appeal. We specifically decline to address the non-binding unpublished Kentucky appellate opinions cited for our consideration in Brian's Appellee Brief.

## CONCLUSION

For the foregoing reasons, we AFFIRM.


ALL CONCUR.

BRIEF FOR APPELLANT:

W. Jeffrey Scott
Grayson, Kentucky

BRIEF FOR APPELLEE:

Earl Rogers III
Morehead, Kentucky